Neil C. Chamelin Director Police Standards and Training Commission Tallahassee
QUESTION:
Are campus security officers employed by the Hillsborough Community College Campus Security Department eligible to participate in the salary incentive program provided under s.943.22, F. S., as amended by Ch. 77-436, Laws of Florida?
SUMMARY:
Section 943.22, F. S., establishes a salary incentive program for law enforcement officers who are defined to mean persons elected, appointed, or employed full time by any municipality of the state or any political subdivision thereof and who are vested with authority to bear arms and make arrests, and whose primary responsibility is the prevention and detection of crime or the enforcement of criminal traffic or highway laws of the state. Although Hillsborough Community College, as an institution operated by the Board of Trustees of the Hillsborough Community College District pursuant to and in compliance with the provisions of part II, Ch. 230, F. S., comes within the statutory definition of political subdivision, and thus qualifies as a political subdivision for the purposes of the salary incentive program, the community college district lacks legislatively conferred authority to employ law enforcement officers and lacks conferred authority to vest officers employed by the district with authority to bear arms and make arrests. Therefore, the campus security personnel are not employed by a political subdivision employing law enforcement officers and are not vested with authority to bear arms and make arrests. Accordingly, security department personnel employed by the district do not come within the purview of the salary incentive program established in s. 943.22, F. S., and are therefore ineligible to participate in such a program unless and until the provisions of part II, Ch. 230 are amended by the Legislature.
According to your letter, and other information furnished this office, the Hillsborough Community College District Campus Security Department employs personnel on a full-time basis for the purpose of providing campus security. These officers, pursuant to an indemnity agreement existing between the Board of Trustees of the Hillsborough Community College District and the Hillsborough County Sheriff, are deputized as special deputy sheriffs with a full police power throughout Hillsborough County, pursuant to s.30.09, F. S. Pursuant to the provisions of s. 943.22, F. S., the Police Standards and Training Commission is charged with responsibility of implementing the legislative intent of strengthening and upgrading law enforcement in Florida by means of a salary incentive program for law enforcement officers. See AGO 072-308, construing s. 23.078, F. S. (1972 Supp.), predecessor to s. 943.22. Section 943.22, as amended by Ch. 77-436, Laws of Florida, provides law enforcement officers shall receive salary incentive moneys on the following conditions:
 (2)(a) Each law enforcement officer who meets basic certification shall receive a sum not exceeding $25 per month in the manner provided for in paragraph (g).
 (b) Each law enforcement officer who has a community college degree or equivalent shall receive a sum not exceeding $30 per month in the manner provided for in paragraph (g).
 (c) Any law enforcement officer who receives a bachelor's degree shall receive a sum not exceeding $50 per month in the manner provided for in paragraph (g).
 (d) Each law enforcement officer who completes 320 hours of approved training courses as established by the career development program of the commission shall receive a sum not exceeding $80 per month. However, the commission may provide for proportional shares for courses completed in 80-hour units in a manner provided for in paragraph (g).
 (e) The maximum aggregate amount any law enforcement officer may receive under this section is $130 per month. However, no education incentive awards shall be made for any state law enforcement position for which the class specification requires the minimum of a 4-year degree, or higher. No contributions shall be required and no benefits shall be paid under the provisions of the Florida Retirement System with regard to any compensation paid under the provisions of this section.
 (f) No local unit or state agency employing law enforcement officers shall use any state funds received, or any federal funds made available, under s. 943.03(8) for the purpose of circumventing payment of any currently planned or existing salary or compensation plan which provides normal pay increases periodically to its law enforcement officers.
 (g) The Division of Police Standards and Training through its commission shall establish rules in cooperation with the department as necessary to provide effectively for the proper administration of the salary incentive program. . . .
Definitions of the terms used within s. 943.22, F. S., governing the salary incentive program for law enforcement officers are set out within subsection (1) of that section and, to the extent pertinent here, provide:
 (a) `Local unit' means any municipality, county or other political subdivision of the state employing law enforcement officers.
 (b) `Law enforcement officer' means any person elected, appointed or employed full-time by any municipality or the state, or any political subdivision thereof, who is vested with authority to bear arms and make arrests, whose primary responsibility is the prevention and detection of crime or the enforcement of the criminal, traffic or highway laws of the state . . . .
Additionally, s. 943.10, F. S., states:
 The following words and phrases as used in ss. 943.09-943.24 shall have the following meanings unless the context otherwise requires:
 (1) `Police officer' means any person employed full-time by any municipality or the state or any political subdivision thereof, whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic or highway laws of the state.
 (2) `Employing agency' means any municipality or the state or any political subdivision thereof employing police officers as defined in subsection (1).
Hillsborough Community College is an institution operated by the Board of Trustees of Hillsborough Community College District, which is a district established in compliance with the provisions of part II of Ch. 230, F. S. Community college districts are independent and separate legal entities governed at the local level by a board of trustees appointed by the Governor and confirmed by the Senate. Section 230.753, F. S. The express legislative intent is that:
 Community colleges continue to be operated by district boards of trustees . . . and that no department, bureau, division, agency, or subdivision of the state shall exercise any responsibility or authority to operate any community college of the state except as specifically provided by law or regulations of the State Board of Education. [Section 230.7535, F. S.]
In order to qualify as a `local unit' within the meaning of s.943.22, F. S., the Hillsborough Community College District must be a municipality, county, or other political subdivision of the state employing law enforcement officers. Section 1.01(9), F. S., provides that in construing Florida Statutes and every word or phrase thereof, where the context permits the words `political subdivision' include, `. . . special tax school districts, special road and bridge districts, bridge districts and all otherdistricts in this state.' (Emphasis supplied.) The context of s.943.22(1)(a) not only does not exclude, but indicates that the words `or other political subdivision' refer to and include local units of government other than counties and municipalities. Therefore, the Hillsborough Community College District, as a special district created under the provisions of part II of Ch. 230, F. S., is a `political subdivision' within the purview of s.943.22.
Having concluded the Board of Trustees of Hillsborough Community College District should be treated as a political subdivision of the state for the purpose of s. 943.22(1)(a), the question resolves into whether within the meaning of s. 943.22 the community college district is a political subdivision of this state `employing law enforcement officers.' As previously set out, s. 943.22(1)(b) as amended by Ch. 77-436, supra, defines `law enforcement officer' to mean
 any person . . . employed full-time by . . . any political subdivision . . ., who is vested with authority to bear arms and make arrests, whose primary responsibility is the prevention and detection of crime or enforcement of the criminal, traffic or highway laws of the state . . . . (Emphasis supplied.)
 Implicit in the italicized portion of the last quoted provision is the proposition that such law enforcement officers are vested with authority by legislative act to bear arms and make arrests. Cf. s. 790.001(8), F. S., which, among other things, defines `law enforcement officer' to mean employees of the state, or subdivisions thereof, who have the authority to make arrests and are duly authorized to carry a concealed weapon, and all peace officers. Peace officers are authorized to make arrests without warrant by the terms of s. 901.15, F. S. I am not aware of any statute granting any authority to make arrests or to bear arms to the community college campus security personnel in question or vesting them with any such authority. A fundamental tenet of statutory construction to be applied here is to give effect to every part of the statute, if reasonably possible, and to construe each part in connection with other parts so as to produce a harmonious result. Snively Groves v. Mayo, 184 So. 839 (Fla. 1939). Accordingly, I conclude in order for a community college district to qualify as `local unit' as defined in s. 943.22(1)(a), and for the purposes of the salary incentive program under s. 943.22, it must, in addition to being a political subdivision of the state for such purposes, be capacitated to employ law enforcement officers vested with authority by law to bear arms and make arrests, as defined in s. 943.22(1)(b). Part II of Ch. 230, F. S., does not appear to expressly or by necessary implication delegate such authority to the Community College District Board of Trustees, nor does it in any manner declare or provide that its campus security personnel are law enforcement officers or peace officers or conservators of the peace. It is axiomatic that the district's governing body can exercise such authority only as confided by law and the extent of its powers rests exclusively in legislative discretion. See AGO 075-148; see also Hopkins v. Special Road and Bridge District No. 4, 74 So. 310 (Fla. 1917); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); and State of Florida ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974). In obvious contrast, the Board of Regents, as established pursuant to s. 240.001, F. S., has express authority to employ law enforcement officers:
 (1) The Board of Regents is hereby empowered and directed to provide for police officers for all institutions and agencies in the State University System and said police officers shall hereafter be designated as `university police.'
 (2) The university police are hereby declared to be law enforcement officers of the state and conservators of the peace with the right to arrest, in accordance with the laws of this state, any person for violation of state law or applicable county or city ordinances when such violations occur on any property or facilities which are under the guidance, supervision, regulation, or control of the State University System, except that arrests may be made off campus when hot pursuit originates on campus. Said officers shall have full authority to bear arms in the performance of their duties and to execute search warrants within their territorial jurisdiction. [Section 239.58, F. S.]
See also s. 239.53(1)(d), F. S.
As observed at the outset, Hillsborough Community College campus security personnel possess arrest powers not by virtue of statute so providing or of their employment by the district, but derivatively, through appointment as special deputy sheriffs by the Hillsborough County Sheriff. I noted in AGO 072-321 that:
 The appointment of special deputy sheriffs for the performance of specific duties or limited tasks is provided for in s. 30.09, F. S. I call your attention to s. 30.09(4)(c), which provides for appointment of a special deputy for the specific duty of serving as a watchman or guard at specified locations or areas only.
Section 30.09(4) permits the appointment of special deputy sheriffs in the following circumstances:
(a) On election day, to attend elections.
(b) To perform undercover investigative work.
 (c) Specific guard or police duties in connection with public sporting or entertainment events, not to exceed 30 days; or, for watchman or guard duty, when serving in such capacity at specified locations or areas only.
 (d) For special and temporary duties, without power of arrest in connection with guarding or transporting prisoners.
 (e) To aid in preserving law and order, or to render necessary assistance in the event of any threatened or actual hurricane, fire, flood or other natural disasters . . . .
 (f) To raise the power of the county, by calling by-standers or others, to assist in quelling a riot . . . .
Special deputies may be vested with full powers of arrest by the appointing sheriff. Appointees, as special deputies, except in the circumstances of s. 30.09(4)(a), (e) and (f), F. S., must meet the minimum requirements set forth by the Police Standards Board. See
AGO's 072-321, 072-381, and 074-281. In AGO 072-381, I concluded that:
 [a] deputy sheriff is not required to come within the definition of `law enforcement officer,' contained in [s. 943.22, F. S.] in order to be entitled to make arrests. That statute sets up a salary incentive program for local law enforcement officers and has nothing to do with arrest powers of a deputy sheriff. Those powers are conferred by ss. 30.07
and 901.15, F. S.
The foremost principle in construing statutes is to ascertain the legislative intent as determined primarily from the language of the statute. VanPelt v. Hilliard, 78 So. 693 (Fla. 1918); Vocelle v. Knight Brothers Paper Co., 118 So.2d 664 (1 D.C.A. Fla., 1960). Legislative intent as deducible from the language employed in the statutes is the law. State v. Knight, 124 So. 461 (Fla. 1929). The statutes are to be given their plain and obvious meaning. A. R. Douglas, Inc. v. McRainey, 137 So. 157 (Fla. 1931). The verb `employ' means to make use of, to use or engage the services of, or to provide with a paying job. Webster's Seventh New Collegiate Dictionary (rev'd. 4th Ed.). Thus, the language used in s. 943.22, F. S., as amended, i.e., `political subdivision in this state employing law enforcement officers,' in its common significance or usage refers to `a political subdivision' empowered by statute to provide for employing police or security officers, who are vested by statute with authority to bear arms and to make arrests, or who are by law declared to be or are made peace officers or conservators of the peace and thus may enforce the laws and make arrests. See s. 901.15, F. S.
As earlier noted, a community college district may exercise such authority as is conferred by law, and the extent of its powers rests solely on the basis of legislative discretion. The provisions of part II of Ch. 230, F. S., do not expressly or by necessary implication delegate authority to the community college district board of trustees to enforce the law or to employ law enforcement officers vested with authority by law to bear arms and make arrests and enforce the laws. Because the Hillsborough Community College District is without authority to provide for or employ law enforcement or police officers authorized by law to bear arms and to make arrests and is not delegated any authority by law to delegate any such authority to make arrests or to bear arms or to enforce the law to employees of the community college security department, I conclude that such persons employed by the community college district's campus security department are not law enforcement officers `employed full time' by a `political subdivision . . . employing law enforcement officers . . . who are vested with authority to bear arms and to make arrests.' Therefore such security department personnel do not come within the purview of the salary incentive program established under s. 943.22, F. S. Accordingly, your question is answered in the negative.
Finally, if circumstances existing on community college campuses within the state warrant employment on a full-time basis of campus security personnel, and I believe there are campuses on which full-time security personnel are required, then the respective community college district boards of trustees should be granted express legislative authority to employ law enforcement officers vested with authority to bear arms, to make arrests, and to enforce the laws on the community college campuses. Accordingly, I recommend that the provisions of part II, Ch. 230, F. S., be amended to include provisions substantially similar to those in s. 239.58, F. S., empowering the Board of Regents to employ law enforcement officers vested with the power to arrest, in accordance with the laws of the state, persons violating state laws or applicable county or city ordinances when such violations occur on campus property or facilities. An express delegation of authority to the community college board of trustees would eliminate the necessity of community college districts negotiating and entering into indemnity agreements similar to that existing between the Board of Trustees of the Hillsborough Community College District and the Hillsborough County Sheriff providing for deputization of campus security personnel. Also, it would bring community college campus law enforcement officers within the purview of the salary incentive program provided in s. 943.22, F. S., on an equal footing with similarly situated law enforcement officers.
Prepared by: Thomas M. Beason, Assistant Attorney General