SNIVELY GROVES, INC. v. NATHAN MAYO, as Commissioner
of Agriculture.

184 So. 839.

En Banc.

Opinion Filed December 7, 1938.

*Willson & Martin,* for Appellant;

*George Couper Gibbs,* Attorney General, *John L. Graham,*
Assistant Attorney General, *Wm. C. Pierce* and *A. Summerlin,* for Appellee.

*E. Glenn Grimes* and *J. Wm. Dupree,* as *amici curiae.*

THOMAS, J.—This appeal is from a decree dismissing the bill of complaint after a hearing on bill and answer. From the pleadings we glean the following facts:

Complainant purchased a crop of citrus fruit which had been sprayed with arsenic, or some of its derivatives. When the fruit was picked defendant seized the same because of the provisions of Section 4 of Chapter 11844, Acts of 1927, as amended by Section 4 of Chapter 14485, Acts of 1929. The chemicals affected the sugar content of the oranges, retarded or prevented formation of citric acid, reduced sugar and juice contents resulting in fruit of inferior quality with dry "ricy" pulp. Such treatment speeds maturity and subsequent decay all to the end that the period of marketing is considerably shortened. Some of the arsenic is now present in the fruit.

We are asked to decide the constitutionality of Sections 2, 4, 5, and Sect. 6 of the above act in the light of the facts which we have recited. Stated simply, did the Legislature overstep its authority in invoking the police power to destroy fruit treated with arsenic and to punish those offending against the statute?

In the case of L. Maxcy, Inc., *et al.,* v. Mayo, Commissioner of Agriculture, *et al.,* 103 Fla. 552, 139 South, Rep. 121, it was stated that the title to the act, here under attack, was constitutionally sufficient. It was said:

"We therefore hold that Section 1 of Chapter 11844, Acts of 1927, as amended by Chapter 14485, Acts of 1929, Ex. Sess., making it a criminal offense to use arsenical sprays on bearing citrus trees, is a valid exercise of the police power of this state, and is constitutional. But in so holding we neither consider nor decide whether or not said statute can be construed as prohibiting the use in the soil, of ordinary

commercial fertilizers containing arsenic, nor whether the statute so construed, would be constitutional under the rules to which we have heretofore made references." 139 South. Rep., text page 131.

Also, "The statute, in so far as it prohibits the direct and deliberate application of arsenical sprays to the growing trees, is certain and definite as to what is denounced as a crime. Even though it should be conceded that the other sections of the act cannot be enforced because of the objection last mentioned, that objection could certainly have no application to a prosecution under Section 1.

"This court takes judicial notice of the fact that the citrus industry of Florida is one of its greatest assets. Its promotion and protection is of the greatest value to the state, and its advancement redounds greatly to the general welfare of the commonwealth. For this reason the Legislature necessarily has a wide field of police power within which to pass laws to foster, promote, and protect the citrus fruit industry of Florida from injurious practices which may tend to injure or destroy either the reputation or value of Florida citrus products in the world's markets. Sligh v. Kirkwood, 65 Fla. 123, 61 So. 185; Id., 237 U. S. 52, 35 S. St. 501, 59 L. Ed. 835.

"Under the police power, the Legislature has the right to adopt suitable statutory regulations for the protection of health, the prevention of fraud, and the prevention (*sic*) of the prevailing public morals. This power which the Legislature has to promote the general welfare of a state is very great, and the discretion which the legislative department of the government has, in the employment of means to that end, is very large." 139 South. Rep., text page 128.

"And so it has been held that while constitutional guaranties cannot be made to yield to mere convenience of enforcement, and while inhibitions of perfectly innocent acts

or conduct cannot be made, merely because to do so will tend to more conveniently circumvent evasions of regulations which are within the legislative power to make (Weaver v. Palmer Bros., *supra*; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224), yet it is also generally recognized that if a certain practice is of general and predominantly evil tendency, so that it is impossible to distinguish the evil from the innocent in it except as to degree, in such cases the Legislature may sometimes prohibit perfectly innocent or harmless acts, as a means of insuring a statute's effectiveness against the dominant evil of acts of that same general class regardless of degree." 139 South. Rep., text page 129.

The sections here under attack should be read with Section 1, already held by this Court not to be in conflict with the inhibitions of the Constitution.

In Mayo, Commissioner of Agriculture, *et al.*, v. Florida Grapefruit Growers Protective Association, 112 Fla. 117, 151 South. Rep. 25, three members of this Court were of the opinion that the interlocutory order appealed from should be affirmed while the other three members were of the opposite opinion, however it was unanimously ordered that because of the divided opinion the ruling of the lower court should be affirmed but "without prejudice to reconsideration of the question of the constitutionality of the statute or of its application, as brought in controversy on this appeal, which question of the constitutionality of the statute and of its application, as applied to this case, is not at this time finally adjudged or decided on this appeal." 151 South. Rep. text page 27.

In studying the constitutionality of a statute the true guide is to take into consideration the whole of the act. As was said in Goode v. State, 50 Fla. 45, 39 South. Rep. 461.

· "It is the general rule, in construing statutes, 'that con-

struction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected, if an interpretation can be found which will give it effect'." 39 South. Rep. text page 463.

So we proceed to an analysis of Sections 2, 4, 5 and 6, bearing in mind that Section 1 has already been held a valid exercise of the police power and constitutional.

Section 2 makes it unlawful to sell, etc., any citrus fruit which contains arsenic or its derivatives. Section 4 places the duty on the inspector to seize fruit found to contain an "abnormal and excessively high ratio of total soluble solids of the juice thereof to the Anhydrous Citric Acid thereof, indicating the presence of arsenic therein * * * " and admonishes all not to sell the same until an analysis is performed by the chemist designated by the Commissioner of Agriculture. If no arsenic is discovered the fruit shall be released. Section 5 relates to the manner of making the analysis. By the inhibitions of Section 6, fruit containing arsenic or any compound or derivative thereof shall be destroyed. Penalty of fine and imprisonment, or both, may be inflicted on violators of the law.

Thus it is the intent of the law to provide destruction of fruit actually containing arsenic or any compound or derivative of arsenic. Does this violate guarantees of the Constitution where it is not shown to be deleterious to human health but only affects the quality, hence the marketability of the fruit?

It was written in Tampa & J. Ry. Co. v. Catts, Governor, et al., 79 Fla. 235, 85 South. Rep. 364, that:

"To ascertain the legislative intent, the court will look to the condition of the country when the act was passed, as

well as to the purpose declared, and will read all parts of the act together." 85 South. Rep., text page 366.

And again, in State, *ex rel.* Finlayson, v. Amos, 76 Fla. 26, 79 South. Rep. 411, Text 413,

"In construing a statute it is the duty of the court to give force and effect to every part of it to carry out the intent of the Legislature."

Discussing the rule which governs the interpretation of a statute, Mr. Justice WHITFIELD wrote, in Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep 398, text 399,

"The language used in a statute should be construed as an entirety and with reference to the purpose of the law as shown by all enactments on the subject; and the meaning of words is ascertained by the connection in which they are used and the evident intent disclosed by all the provisions on the same subject. Particular words or provisions should be construed with reference to the general purpose designed to be accomplished. A construction should, if practicable, be adopted that would make the act constitutional and effective, rather than one that would render it of doubtful validity or uncertain and incapable of definite and effective enforcement. It must be assumed that the Legislature intended a valid and effective enactment; and the construction of an act should be such as to make it valid and effective if its language does not exclude such a result."

Section 1 of the Act, heretofore held valid and effective, prohibits the use of arsenic or derivatives as a fertilizer or spray on bearing citrus trees. The other sections to which reference has been made and which are under attack provide means for enforcing the interdictions of Section 1 by criminal prosecution and by confiscation, but it should be noted that such prosecution and confiscation do not result from the mere use of arsenic and its derivatives as a spray

or fertilizer. These steps in the enforcement of the inhibitions of Section 1 apply only when such chemical has been used to the extent that its presence is apparent in the fruit.

To hold that Sections 2, 4, 5 and 6 do violence to the Constitution would have the effect of rendering the entire act nugatory for there would be no means of enforcing Section 1.

The citrus fruit industry is one of Florida's greatest, consequently the shortening of the season, the cultivation of inferior fruit and the marketing of a product inspiring lack of confidence in the buying public would result in downright loss not only to the growers as a whole not resorting to such methods, but to a vast army of employees dependent upon the business for a livelihood. (Maxcy v. Mayo, *supra.*) In these circumstances, we think it cannot be successfully contended that a grower who uses arsenic in such quantities as to cause its appearance in mature fruit is denied the rights guaranteed him under the Constitution of Florida when his inferior fruit is destroyed or he is prosecuted for his misdeed.

In Powell v. Commonwealth of Pennsylvania, 127 U. S. 678, 32 L. Ed. 253, 8 Sup. Ct. Rep. 992, 1257, a law prohibiting substitutes for butter and cheese was held not to contravene the Fourteenth Amendment of the Constitution of the United States. It is well to quote the following passage from that opinion.

"The Legislature of Pennsylvania, upon the fullest investigation, as we must conclusively presume, and upon reasonable grounds, as must be assumed from the record, has determined that the prohibition of the sale, or offering for sale, or having in possession to sell, for purposes of food, of any article manufactured out of oleaginous substances or compounds other than those produced from unadulterated milk or cream from unadulterated milk, to take the place of

butter produced.from unadulterated milk or cream from un-adulterated milk, will promote the public health, and prevent frauds in the sale of such articles. If all that can be said of this legislation is that it is unwise, or unnecessarily oppres-sive to those manufacturing or selling wholesome oleo-margarine, as an article of food, their appeal must be to the Legislature, or to the ballot-box, not to the judiciary." 32 L. Ed., text page 257.

See also State v. Layton, 160 Mo. 474, 61 S. W. Rep. 171; People v. Price, 257 Ill. 587, 101 N. E. Rep. 196; Capital City Dairy Company v. State of Ohio, 183 U. S. 238, 46 L. Ed. 171, 22 Sup. Ct. Rep. 120.

We indulged the presumption that the challenged act was valid. We find, after examination of the authorities that this presumption has not been overcome. We hold that the law is constitutional.

The decree of the lower court is affirmed.

Affirmed.

TERRELL, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially)—The scope of the deci-sion in this case is necessarily limited by the facts. The facts alleged by the bill and admitted by the answer show that the constitutionality of the statute as applied to oranges only is involved. The crop of fruit purchased by the ap-pellant, and afterward, when picked, seized by the appellee, was a crop of oranges. The constitutionality of the statute, as applied to grapefruit, is not involved here.

The decree which is here affirmed closes with this para-graph:

"WHEREFORE, it is hereby ORDERED, ADJUDGED AND DE-CREED that the equities in this cause are with the defendant;

that the Statutes referred to are constitutional as applying to citrus fruit other than grapefruit and that the injunction prayed for in the Bill of Complaint be and the same is hereby denied and that the Bill of Complaint be and the same is hereby dismissed on its merits."

The evidence in the case of Mayo v. Florida Grapefruit Protective Association, cited in the opinion of Mr. Justice THOMAS, fully upheld the conclusion reached by Circuit Judge Petteway in that case that the use of arsenical sprays upon grapefruit, in the ordinary and usual course, by growers in this State, did not render the fruit deleterious to health, nor did it have any injurious effect upon the marketing of Florida citrus fruits. I called attention to this in my special opinion, concurring with Justices ELLIS and BUFORD in that case, and it was because of the evidence adduced in that case that I reached the conclusion that the statute was not constitutionally applicable to grapefruit on the evidence then before us. Upon the facts alleged and admitted in this case, as to the deleterious effect upon oranges, I concur with the other members of the court that the statute is constitutionally applicable in so far as oranges are concerned, and that the decree below should be affirmed.

BUFORD, J., concurs.