483 So.2d 1373 (1985)
Alan CHEEK, Appellant,
v.
McGOWAN ELECTRIC SUPPLY CO., Appellee.
No. AU-89.
District Court of Appeal of Florida, First District.
August 20, 1985.
As Clarified on Denial of Rehearing March 11, 1986.
*1374 M. Stephen Turner of Culpepper, Beatty & Turner, Tallahassee, for appellant.
William C. Owen and W. Douglas Hall of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellee.
PER CURIAM.
Alan Cheek appeals, and McGowan Electric Supply Co. cross appeals a final judgment entered upon a jury verdict holding Cheek liable to McGowan on a promissory note. The appeal raises four issues; the cross appeal raises a single issue. We affirm.

ISSUE I

WHETHER THE TRIAL COURT ERRED IN FINDING CHEEK LIABLE FOR THIRTY-FIVE PERCENT OF THE IMPROPER CHARGES MADE TO THE GUARANTEED ACCOUNT.
This is a suit on a promissory note executed by appellant Cheek and one Thomas Cook on behalf of appellee McGowan, as payee.[1] The note was delivered in satisfaction *1375 of a sum owing for goods purchased by Cook from McGowan under a credit arrangement whereby Cheek acted as guarantor for credit purchases made by Cook from McGowan of electrical supplies to be used on Cheek's jobs.
It is undisputed that, prior to the execution of the guaranty agreement by Cheek, McGowan had cut off Cook from further credit purchases of electrical supplies and that Cheek solicited McGowan to allow purchases by Cook so that Cook could continue to work on Cheek's construction jobs. The record further establishes that Cook had done Cheek's electrical work for about two years before Cheek undertook to guaranty his credit purchases from McGowan. Accordingly, Cheek signed a credit application for Cook with McGowan which contained the following wording:
We the undersigned do hereby give our personal guarantee of payment for all debts incurred and any finance charges incurred due to late payments on open account with McGowan Electric Supply Company by Thomas L. Cook  special account, Alan Cheek job, or by us and agree to pay all court cost and seller's attorney's fees if legal action should ever become necessary to collect any amounts owing.
There was no provision in the agreement that McGowan would "police" the account to see that Cook did not charge anything to the account that was not to be used in Cheek's jobs, and Cheek did not furnish McGowan with a list of jobs for which charges would be permitted.
Some three months after the credit application was signed, McGowan called Cheek to advise him of the account status and that money was owing. Thereafter, McGowan contacted Cheek concerning the account balance when the balance reached over $8,000; again when the account reached over $15,000; again when the account reached $17,000; and finally when the account reached over $20,000. The credit arrangement was terminated in December, 1977, although, pursuant to telephone calls from Cheek on three separate occasions, Cook was allowed to purchase additional materials from McGowan.
McGowan sought to collect from Cheek under the guaranty agreement. Ultimately, on April 18, 1978, Cheek signed a promissory note in the amount of $22,000. In the suit on the note, Cheek asserted as defenses, and the jury was charged on: (1) mistake based on the fact that there were charges on the account which were not in compliance with the limitations of Cheek's guaranty; and (2) McGowan's breach of the guaranty by failure to inform Cheek that improper charges were made by Cook to the account.
Crucial to these defenses was the question of whether Cheek exercised due diligence to learn of the improper charges and to prevent, or to inform the other side, of Cook's making of improper charges. For its part, McGowan conceded that Cheek would not be responsible under the guaranty for those materials purchased by Cook which McGowan knew or should have known were purchased not for use in Alan Cheek jobs. The jury was so instructed.
The trial court prepared and, with the acquiescence of the parties, submitted to the jury a verdict form[2] and instructions *1376 which allowed the jury to apportion the responsibility[3] between McGowan and Cheek for the improper charges of the impecunious electrical subcontractor, Thomas Cook. This was an eminently sensible handling of the matter, and the result is fair to both sides and is supported by the record, which shows that both McGowan and Cheek each had some opportunity to verify whether the charges being made and the goods being delivered were in fact for use on Alan Cheek jobs. The jury evaluated the responsibility of each and found each side partially responsible. Appellant now objects to the trial court's application of that verdict to allocate to each side a portion of the improper charges.
In the special interlocutory verdict, the jury determined that there were "improper charges" to the account in the amount of $17,163, an amount which coincides closely with the charges Cheek's expert witness testified were based on invoices not referenced specifically to Cheek's jobs. The jury also found that McGowan knew or should have known of some improper charges, that Cheek failed to act reasonably in order to avoid improper charges being made to the account, and assigned McGowan 65 percent, and Cheek 35 percent, of the total responsibility for the improper charges. The court multiplied McGowan's percentage of fault times the "improper charges" and gave Cheek a credit for this amount, both on the note and finance charges. After making the final calculations, the court determined that the balance owed to McGowan by Cheek was $7,223.93 plus interest of $3,268.55, for a total of $10,492.48.
The concept of negligence is recognized in Florida and under the Uniform Commercial Code (UCC) in contract matters. Earlier Florida cases referred to the concept as "a lack of due diligence;"[4] subsequent cases have used the term "negligence."[5] *1377 The trial court here, in order, no doubt, to avoid any confusion with the similar tort doctrine, framed the question as whether the guarantor of the note "acted reasonably in order to avoid improper charges being made to the account." These instructions, which also allowed the jury to find responsibility on the part of McGowan to the extent it "knew or should have known" of improper charges, are, indeed, more favorable to the appellant than they are required to be but, in any event, are not subject to the challenge asserted by appellant here.
First of all, as maker of a promissory note, appellant was required, in establishing his defenses of mistake, misrepresentation, and/or failure of consideration, to negate negligence or lack of diligence on his part. The signer of a promissory note is responsible for that which he knew, or should have known, at the time he executed the note. Second, an equitable maxim of long standing applicable to guaranty agreements is that party who trusts the debtor is responsible in the event the debtor defaults. In this case, Cook was working on Cheek's jobs, and Cheek solicited McGowan to extend the credit. As between Cheek and McGowan, both "innocent" parties, the responsibility for Cook's failure to pay rests with Cheek, the party who was in the better position to protect himself and who also initiated the credit arrangement.
In Ruwitch v. First National Bank of Miami, 291 So.2d 650 (Fla. 3d DCA 1974), cert. denied, 305 So.2d 196 (Fla. 1975), a bank extended credit to a corporate debtor, Harmony, Inc., based on guaranties purportedly executed by the president and vice president of that corporation. In fact, credit was extended based on a forged guaranty made by one Baker, who was the secretary and treasurer of the corporation. The court held that the fraud was not available as a defense to the bank's suit against the president and vice president of the corporation, as individuals, stating the general rule that, as between two innocent parties suffering from the fraud of a third, the party whose own negligence or misplaced confidence enables the third party to consummate the fraud must bear the loss. The court held (291 So.2d at 652):
As a general rule, when knowledge of alleged misrepresentation or concealment of material facts is equally available to both parties and the subject matter is open equally to their inspection, one not availing himself of the opportunity to ascertain the truth, will not be heard to raise the misrepresentation of the other party. [citations omitted]
Appellants were officers and guarantors of the principal, Harmony. As between two innocent parties suffering from the fraud of a third, the party whose own negligence or misplaced confidence enabled the third party to consummate the fraud must bear the loss. [citations omitted; emphasis added]
Had the dealings between the parties in the instant case been a single transaction and Cheek guilty of a lack of diligence with regard thereto, the trial court would have been duty bound to direct a verdict in the full amount in favor of McGowan Electric based on the foregoing principles. There would be no basis for allocation of fault, and, as guarantor, Cheek would be totally responsible for all improper charges. However, since the transactions here were a series of sales evidenced by invoices which varied as to their indication of job and other factors which would enable the guarantor to verify the charges made and because the case was tried on that basis under McGowan's concession previously mentioned, it was proper for the trial court to allow the placing of responsibility in part on each side for the goods improperly charged and obtained by Cook. This was not an application of the concept of "contribution or comparative *1378 negligence".[6] What was accomplished here was allocation as between two innocent parties (Cheek and McGowan) of the responsibility for debts of the third-party wrongdoer. This is not unprecedented in contract actions where, due to special circumstances, a number of parties are found to share the "responsibility" for the ultimate breach and loss sustained.[7]
Therefore, in the instant case, the appellant had the unenviable task of seeking to avoid his signature on a promissory note for goods which were admittedly delivered to Cook by establishing that, at the time he signed the promissory note, he neither knew nor should have known that there were improper charges. To the extent that he could have determined improper charges by checking the invoices available to him and verifying the nature of the materials there shown as being of the type used in residential construction, this defense should fail.
The trial court, in considering the continuing nature of the guaranty agreement, the number of transactions and invoices, gave the guarantor/maker here the benefit of the doubt by allowing a reduction of the amount owed under the promissory note in the event the jury found that Cheek's failure to discover the improper charges was due to some failure of McGowan to use proper care. The result of the allocation was more favorable to appellant than would be required under the general law of guaranty since even a guaranty covering purchases made for a specific purpose does not, in the absence of an express provision, impose upon the creditor the obligation of "policing" the guaranty account to insure that the purchases are in fact so made or used for that purpose,[8] and *1379 the guarantor would remain liable for all charges in the absence of actual knowledge or wrongdoing by the creditor, which was not shown here.

ISSUE II

WHETHER THE TRIAL COURT ERRED IN FAILING TO TOTALLY DISCHARGE CHEEK OF HIS OBLIGATION AS A RESULT OF McGOWAN ELECTRIC'S NEGLIGENCE.
Cheek argues that a guarantor is discharged from all liability under the guaranty agreement when the creditor has knowledge that the debtor is making charges to the account which are not included within the terms of the guaranty. We have examined the authorities cited by Cheek in support of this proposition[9] and find them inapplicable to this case. The authorities cited by Cheek either involve factual situations where the debtor's misconduct is in the nature of fraudulent inducement in persuading the guarantor to enter into the guaranty agreement or involve a party who is a surety, not a guarantor. The cases and authority dealing with suretyship involve a totally different legal concept. We find no authority to support Cheek's argument that he is discharged from liability because of any misconduct on the part of McGowan. On the contrary, in Wishart v. Gates Rubber Co. Sales Division, Inc., 163 So.2d 503 (Fla. 3d DCA 1964), the court held that a guarantor is not relieved of his liability merely because credit has been extended to the principal debtor beyond the amount to which the guarantor's liability is limited. Therefore, Cheek is liable for that portion of the promissory note given in consideration of charges to the account made within the terms of the guaranty agreement.

ISSUE III

WHETHER THE TRIAL COURT ERRED IN DENYING COSTS TO CHEEK.
On March 19, 1980, fifteen days prior to the first trial, Cheek served McGowan with an offer of judgment pursuant to Rule 1.442, Florida Rules of Civil Procedure, in the amount of $4,500, plus interest and costs. A new offer of judgment in the amount of $7,500, plus interest and costs, was served on Monday, March 24, 1980, exactly ten days prior to trial. Neither offer was accepted. McGowan's ultimate recovery after the second trial was $7,223.93, plus interest. Cheek maintains that, since McGowan's recovery was less than the $7,500 offer of judgment, he is entitled under the rule to recover costs and avoid liability for postoffer attorney's fees.
Initially, we note that the March 24 offer of judgment was not served more than ten days before trial, as required by Rule 1.442, Florida Rules of Civil Procedure. This requirement is necessary to afford the adverse party at least ten days before commencing trial in which to consider and accept the offer. Since the second offer was not served in compliance with the rule, it was invalid and of no effect. The resulting question, therefore, is what effect, if any, the second invalid offer had on the prior offer of March 19. We have been furnished no citation to authority on this question and have found none. We take note, however, that the provisions in Rule 1.442 are grounded upon the public policy of avoiding trials and ensuing appeals by imposing cost sanctions if an offer, once made and not timely accepted, equals or exceeds the amount of the adverse party's ultimate recovery. Giving effect to that salutary purpose, we hold that service of *1380 the invalid offer on March 24 did not supersede, alter, or otherwise terminate the potential consequences of the first offer served on March 19. Had the original judgment against Cheek not exceeded $4,500, plus interest and costs, and had it been affirmed on appeal, Cheek would have been entitled to his costs under Rule 1.442.
Cheek's offer of judgment, however, was made prior to the first trial, and that judgment was reversed for a new trial. 404 So.2d 834. After remand, Cheek did not renew his previous offers or serve a new offer of judgment. The trial court denied Cheek's demand for costs after the second trial on the ground that the offers of judgment made prior to the first trial were not effective as to the second trial. We disagree with this ruling.
Neither side has cited any controlling Florida decision on this issue.[10] Rule 1.442, Florida Rules of Civil Procedure, provides that "[i]f the judgment finally obtained by the adverse party is not more favorable than the offer, he must pay the costs incurred after the making of the offer" (emphasis added). We construe the phrase "judgment finally obtained" to mean a judgment which has disposed of the case and become final after all rights to appellate review have been exhausted. The July 25, 1980, judgment was not final in this sense because it was appealed to this court and reversed, and a new trial was ordered. Consequently, the effect of the original offer of judgment and resulting benefits to Cheek were not terminated by the first trial. We are supported in this construction of the rule by its manifest purpose to promote settlements without further resort to the full judicial process, including appeals. We hold, therefore, that the consequences of the valid March 19 offer of judgment for $4,500 remained viable through the second trial and this appeal, and shall continue until such time as the trial court's judgment ultimately becomes final after this appeal and review, if sought, in the Supreme Court. Of course, if our opinion is not disturbed, the recovery by McGowan will exceed the amount of Cheek's offer.

ISSUE IV

WHETHER THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO McGOWAN ELECTRIC WHEN SUCH CLAIM WAS NOT PRESENTED TO THE JURY.
In the promissory note sued upon, Cheek agreed to pay "all costs, including reasonable attorney's fees." McGowan sought fees from Cheek on the basis of this provision, and the trial court initially refused to award such fees upon a finding that McGowan had failed to present such issue to the jury. Subsequently, the trial court reversed its position, relying specifically upon Taggart Corp. v. Benzing, 434 So.2d 964 (Fla. 4th DCA 1983), and awarded fees to McGowan, holding that it was not necessary that such issue be presented to the jury. We affirm.
The Second, Third, and Fifth Districts have specifically held that "[i]n a jury trial a claim for attorney's fees predicated upon a provision in the contract between the parties becomes an element of damages and must be determined by the jury." Newcombe v. South Florida Business Negotiators, Inc., 340 So.2d 1192, 1194 (Fla. 2d DCA 1977) (footnote omitted); Lhamon *1381 v. Retail Development, Inc., 422 So.2d 993 (Fla. 5th DCA 1982); Commodore Plaza at Century 21, etc. v. Cohen, 350 So.2d 502 (Fla. 3d DCA 1977), appeal dismissed, 362 So.2d 1051 (Fla. 1978). The Fourth District has considered this issue and, contrary to the other districts, has held that attorney's fees predicated upon a provision in a contract may be awarded upon proof presented after final judgment. Taggart Corp. v. Benzing, 434 So.2d 964. The court stated that to require each side to prove fees before the jury is "a waste of time" since only one party will prevail and be entitled to fees. Id. at 966. The court further noted that one of the factors to be considered in arriving at a reasonable fee is the outcome of the case and "[t]hat is obviously an easier task after the fact." Id. We agree with the rationale of the Fourth District in Taggart and affirm the trial court's award of attorney's fees. As was done in Taggart, we certify the following question as one of great public importance:
WHERE ATTORNEY'S FEES ARE PLED IN A SUCCESSFUL SUIT FOR RECOVERY PURSUANT TO A PROMISSORY NOTE, AND THE NOTE PROVIDES THAT THE MAKER SHALL PAY "REASONABLE ATTORNEY'S FEES," MAY THE PROOF OF SUCH FEES BE PRESENTED FOR THE FIRST TIME AFTER FINAL JUDGMENT PURSUANT TO A MOTION FOR ATTORNEY'S FEES BY THE PREVAILING PARTY?

ISSUE ON CROSS APPEAL

WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF McGOWAN ELECTRIC.
McGowan argues that the proper interpretation of the guaranty agreement was a matter of law for the court, not a matter of fact to be submitted to the jury, and that the court should have interpreted the guaranty agreement as relieving Cheek of liability only with respect to those charges for materials which McGowan knew or should have known were not used in Cheek construction jobs. It further contends that there was a total absence of evidence in the record to show that McGowan knew or should have known that Cook was charging materials to the Cheek account which were not used in Cheek construction jobs, and, consequently, the court should have directed a verdict in favor of McGowan for the full amount of the promissory note.
The long-standing rule is that where the written words in an agreement leave uncertainty because of ambiguity or imcompleteness  especially where the evidence is conflicting, ambiguous, or subject to different inferences  the meaning of the agreement is for jury resolution. Hoffman v. Terry, 397 So.2d 1184 (Fla. 3d DCA 1981). In the present case, the terms of the contract between the parties are ambiguous, and the parties introduced evidence of oral statements and course of conduct supportive of their respective views of the proper interpretation of the agreement. Because the agreement was ambiguous and extrinsic matters were necessary to a proper determination of its meaning, the court was correct in submitting the issue to the jury. Accordingly, we affirm the court's denial of McGowan's motion for directed verdict.
AFFIRMED.
BOOTH, C.J., and ERVIN and ZEHMER, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
Appellant has filed a motion for rehearing and a motion to correct or clarify our opinion. Appellee has also filed a motion for rehearing and motion for clarification. Except for the clarifications hereafter noted, all motions are denied.
Appellant correctly points out in his motion to clarify that we erroneously recited that appellant made "a new offer of judgment" on March 24, 1980. In fact, the offer of judgment made on March 24 was titled "Amended Offer of Judgment," and specifically referred to the prior offer *1382 served on March 19. Additionally, we note that by pretrial order the discovery cutoff date was set at March 24, 1980, the day on which appellant's amended offer of judgment was hand-served on appellee. Unfortunately, as we pointed out in our original opinion, service on March 24, nine days before trial, was ineffective under rule 1.442, Florida Rules of Civil Procedure, which requires that offers of judgment be made more than ten days before trial. We do believe, however, that the issues affecting the validity of appellant's March 24 offer of judgment are of great public importance in view of current legislative and judicial emphasis on use of the offer-of-judgment procedure as an effective means for settling disputes and reducing litigation, and therefore certify to the Supreme Court the following questions of great public importance:
1. WHETHER AN AMENDED OFFER OF JUDGMENT RELATES BACK TO THE DATE OF SERVICE OF THE ORIGINAL OFFER OF JUDGMENT FOR PURPOSES OF THE TIME REQUIREMENTS IN RULE 1.442, FLORIDA RULES OF CIVIL PROCEDURE?
2. WHETHER, WHEN THE ELEVENTH DAY BEFORE TRIAL FALLS ON A SATURDAY, HAND DELIVERY OF AN OFFER OF JUDGMENT ON THE FOLLOWING MONDAY IS EFFECTIVE UNDER RULE 1.442, FLORIDA RULES OF CIVIL PROCEDURE?
3. WHETHER AN OFFER OF JUDGMENT HAND-SERVED ON THE NINTH DAY BEFORE TRIAL IS VALID WHERE THE PARTIES HAVE AGREED BY PRETRIAL ORDER THAT THE DISCOVERY CUTOFF DATE SHALL BE THE NINTH DAY BEFORE TRIAL?
4. WHETHER AN OFFER OF JUDGMENT REMAINS VALID AND OUTSTANDING AFTER A NEW TRIAL HAS BEEN GRANTED?
Appellant also points out that we erroneously stated in our opinion that the trial court's verdict form and instructions to the jury were submitted to the jury "with the acquiescence of the parties." The record reflects that the jury verdict form submitted to the jury was prepared by the court. Appellant's counsel repeatedly sought clarification of the effect of the verdict form and acquiesced in use of the form and the instructions to the jury after he received what he considered a satisfactory explanation of their intended meaning and effect. We do not construe these requests for clarification as an objection to the allocation of fault covered by the instructions and the verdict. We reaffirm our holding that the verdict rendered by the jury was applied by the court in "an eminently sensible" manner that was fair to both sides.
Appellee's motion for rehearing of our order denying attorney's fees to appellee is denied because the petition for attorney's fees filed in this court fails to state "the ground upon which recovery is sought" pursuant to rule 9.400(b), Florida Rules of Appellate Procedure. Such statement of grounds was of particular importance since appellant contests appellee's construction of the contractual right to fees.
ERVIN and ZEHMER, JJ., concur.
BOOTH, C.J., concurring in part and dissenting in part:
BOOTH, C.J., concurring in part and dissenting in part:
I respectfully dissent from certification, since the termination of this litigation[1] should not be further prolonged.
NOTES
[1] The prior appeal in this case reversed the judgment below after jury trial and remanded for a new trial. Cheek v. McGowan Electric Supply Co., 404 So.2d 834 (Fla. 1st DCA 1981).
[2] Verdict of the jury:

We, the jury, find the following verdict:
1. Were there charges made to the guaranty account, guaranteed by the defendant, ALAN CHEEK,
a. which were not within the contemplation of the agreement between the parties?
 [X] Yes ____ No
b. which the plaintiff, McGOWAN ELECTRIC, knew, or should have known, were improper?
 [X] Yes ____ No
(If the answer to both of the above questions is NO, then your verdict is for the plaintiff, and you should proceed no further except to have your foreman date and sign the verdict form. If your answer to either question is YES, please answer question No. 2)
2. What was the amount of any improper charges to said account?
$17,163.00
(If your answer to question 1b is YES, answer the following question.)
3. Did the defendant, ALAN CHEEK, act reasonably in order to avoid improper charges being made to the account?
 ____ Yes [X] No
(If your answer to question No. 3 is NO, answer question No. 4. If your answer is YES, skip question No. 4, and have your foreman sign and date the verdict form.)
4. What percentage of fault (100%) do you assign to each party?
McGOWAN ELECTRIC 65% ALAN CHEEK 35% (Total must equal 100%) So say we all. DATED this 15th day of December, 1982.
[3] Instructions to jury, in pertinent part:

I further charge you that the Plaintiff McGowan, owed the Defendant Cheek a duty to disclose facts which materially increased Cheek's risk for liability with respect to the guaranteed account.
If the Plaintiff McGowan knew or should have known of the misconduct by the debtor Cook, then the Plaintiff owed a duty to inform Defendant Cheek.
I further charge you, however, that the Defendant Cheek had a duty to use reasonable care in order to avoid improper charges being made to the account.
I further charge you that where both the creditor McGowan and guarantor Cheek are equally ignorant of the debtor's wrongdoing, the creditor McGowan, is entitled to recover.
[4] See, e.g., Padgett v. Lewis, 54 Fla. 177, 45 So. 29, 31 (1907), wherein the defendant raised partial failure of consideration and other defenses in a suit on a promissory note, and the court, after noting that a six-month period had passed between the time of the execution of an original note and a renewal note, held:

Would this not seem to be ample time for the defendants to have discovered all the facts and circumstances which are set out in the plea, and to have ascertained what their rights were in the premises? If they did not discover such facts and circumstances, and ascertain their rights, they could have done so with ordinary diligence, and it was their duty so to do. It must be assumed, then, that they either knew of these matters at the time of the renewal of the note, or that they could have readily ascertained them. [emphasis added]
Franklin Phosphate Co. v. International Harvester Co., 62 Fla. 185, 57 So. 206, 207 (1912); Treadwell v. Exchange National Bank of Tampa, 172 So. 914, 915 (Fla. 1937); Hurner v. Mutual Bankers Corp., 140 Fla. 435, 191 So. 831, 833 (1939).
[5] See, e.g., Lewinson v. Frumkes, 64 So.2d 321 (Fla. 1952), wherein the maker of the notes defended based on fraud and deception, the Florida Supreme Court reversed summary judgment for the maker of the promissory notes, ruling that the evidence did not sustain a finding that the maker had been free from negligence in endorsing the notes and held:

The sole point for determination is whether or not appellee executed the notes free from negligence on her part.
It is admitted that if she executed the notes at the request of a third party, free from negligence on her part, her plea [fraud and deception] was a good defense to their execution. [emphasis added]
[6] The terms "contributory negligence" and "comparative negligence" were used by counsel for appellant in the colloquy between the judge and counsel regarding jury instructions. Those terms were not used by the trial court. We also disagree that the trial court agreed with appellant's counsel that, in the event the jury found fault on the part of McGowan in allowing improper charges to be made to the account, the appellant Cheek would then be discharged as to the proper charges as well. That was not the charge to the jury and is not the correct law. The rule is that the fact that there are improper or excessive charges made which are contrary to the terms of the guaranty agreement does not relieve the guarantor of liability for the proper charges. The guarantor is still responsible for the proper charges. It is only in the event that misconduct on the part of the guarantee jeopardizes the security or prejudices the agreement as a whole that the entire guaranty is vitiated. 38 C.J.S. Guaranty § 67; 28 Fla.Jur.2d Guaranty and Suretyship §§ 31, 32.
[7] Jimani Corporation v. S.L.T. Warehouse Company, 409 So.2d 496 (Fla. 1st DCA 1982), petition for review denied sub nom. Metro Bank of Dallas v. S.L.T. Warehouse Co., 417 So.2d 330 (Fla. 1982), is a suit involving a warehouse lien, creditors' rights in security interest, and contractual rights between a manufacturer and buyer of goods, in which the court allocated responsibility in various percentages against four parties to the suit. In Bildon Farms, Inc. v. Ward County Water Imp., 415 S.W.2d 890, 896 (Texas 1967), a suit for breach of contract to furnish water, the jury found that the water company was 70 percent and the farmer 30 percent responsible for the losses resulting. The court held:

We also disagree with the holding of the Court of Civil Appeals that Issue No. 7, as submitted, called for the application of the doctrine of comparative negligence. The issue simply called upon the jury to apportion the damages. [emphasis added]
Lesmeister v. Dilly, 330 N.W.2d 95 (Minn. 1983), involved a contract action where failure to mitigate damages was held to be "fault" which could be apportioned based on the jury's verdict of 40 percent responsibility against the plaintiff. The court in Printpack, Inc. v. Container Technologies, 124 Ill. App.3d 568, 79 Ill.Dec. 700, 464 N.E.2d 298 (1984), upheld an award of 30 percent of the contract price and rejected the contention that this constituted an application of "comparative negligence."
[8] See Bryant v. Food Machinery and Chemical Corporation, 130 So.2d 132, 134 (Fla. 3d DCA 1961):

Concerning the question of notice, the authorities are fairly uniform that notice to the guarantor of the transaction as between the principal-debtor and guarantee is purely one of special contract; and that in the absence of a specific provision so requiring, no obligation rests upon the guarantee to advise or notify the guarantor. [citations omitted]
See Schaeffer v. Gilmer, 353 So.2d 847 (Fla. 1st DCA 1977), wherein the guarantors and creditors were parties to a contract of guaranty which specifically incorporated the loan agreement between the debtor (contractor) and the creditor, and this court held that the individual guarantors could assert, by way of affirmative defense, the creditor's failure to enforce the construction loan agreement against the debtor but could not assert as an affirmative defense the creditors wrongful disbursement by failing to obtain assurances from contractors, suppliers, and materialmen that they were receiving loan proceedings for the work performed.
[9] 38 Am.Jur.2d Guaranty § 59; 37 Am.Jur.2d Fraud and Deceit § 147. Stern's Law of Suretyship (5th ed.) § 7.16; 28 Fla.Jur.2d Guaranty § 47; Lambert v. Heaton, 134 So.2d 536 (Fla. 1st DCA 1961); 21 Fla.Jur.2d Fraud §§ 39, 43.
[10] Appellant does, however, quote the following from 7 Moore's Federal Practice § 68.06, which supports our decision:

The above sentences in amended Rule 68 assure a party the right to make a second offer where the situation permits  as, for example, where a prior offer was not accepted but the plaintiff's judgment is nullified and a new trial ordered, whereupon the defendant desires to make a second offer. It is implicit, however, that as long as the case continues  whether there be a first, second or third trial  and the defendant makes no further offer, his first and only offer will operate to save him the costs from the time of that offer if the plaintiff ultimately obtains a judgment less than the sum offered. In the case of successive offers not accepted, the offeror is saved the costs incurred after the making of the offer which was equal to or greater than the judgment ultimately obtained. [emphasis added; footnote omitted]
[1] First trial was in March of 1980, based on dispute going back to 1978. See Cheek v. McGowan Electric Supply Company, 404 So.2d 834 (Fla. 1st DCA 1981).