715 So.2d 967 (1998)
CORFAN BANCO ASUNCION PARAGUAY, a foreign banking corporation, Appellant,
v.
OCEAN BANK, a Florida bank, Appellee.
No. 97-1363.
District Court of Appeal of Florida, Third District.
June 10, 1998.
Rehearing Denied September 2, 1998.
*968 Silver & Waldman, and Glen Waldman, Miami, for appellant.
Coffey, Diaz & O'Naghten, Miami; Kendall Coffey and Louis K. Nicholas, II, Miami, for appellee.
Before NESBITT, LEVY and SORONDO, JJ.
SORONDO, Judge.
Corfan Banco Asuncion Paraguay, a foreign banking corporation (Corfan Bank), appeals the lower court's entry of a Final Summary Judgment in favor of Ocean Bank, a Florida bank.
On March 22, 1995, Corfan Bank originated a wire transfer of $72,972.00 via its intermediary Swiss Bank to the account of its customer, Jorge Alberto Dos Santos Silva (Silva), in Ocean Bank. The transfer order bore Silva's name as the recipient and indicated that his account number was 010070210400 (in fact, this was a nonexistent account). Upon receipt of the wire transfer, Ocean Bank noticed a discrepancy in this number and before depositing the money, confirmed with Silva that his correct account number was 010076216406.[1] Ocean Bank did not, however, inform Corfan Bank or Swiss Bank of the error. Once the correct number was confirmed by Silva, Ocean Bank accepted the wire transfer and credited Silva's account.
The next day, Corfan Bank became aware of the account number discrepancy and, without first checking with either Silva or Ocean Bank, sent a second wire transfer of $72,972.00 to Silva's correct account number at Ocean Bank. The second transfer order did not indicate that it was a correction, replacement or amendment of the March 22nd transfer. Because the information of the transfer was correct, it was automatically processed at Ocean Bank and was credited to Silva's account. Several days later, Corfan Bank inquired of Ocean Bank regarding the two transfers, maintaining that only one transfer was intended. By that time, Silva had withdrawn the proceeds of both wire transfers.[2] When Ocean Bank refused to repay $72,972.00 to Corfan Bank, this litigation ensued. Corfan Bank proceeded on two claims, one based on the section 670.207, Florida Statutes (1995), which codifies as Florida law section 4A-207 of the Uniform Commercial Code (UCC), and one based on common law negligence. Ocean Bank answered denying liability under the statute and also contending that the negligence claim was precluded by the preemptive statutory scheme.
The trial court, emphasizing that Florida's adoption of the UCC sections concerning wire transfers did not abrogate the basic tenets of commercial law, found that Ocean Bank had not contravened section 670.207 by crediting the erroneous March 22nd wire transfer to Silva's account. Finding that Corfan Bank was the party best situated to have avoided this loss, the court held that *969 Corfan Bank must bear that loss and, therefore, the court granted Ocean Bank's motion for summary judgment as to count one (the UCC count). Additionally, the court dismissed count two (the negligence count).
We begin with a review of the exact language of section 670.207(1), Florida Statutes:
(1) Subject to subsection (2), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.
Corfan Bank argues that this language is clear and unambiguous, where a name or bank account number, or other identification refers either to a nonexistent or unidentified person or a nonexistent account, the order cannot be accepted. Ocean Bank responds that such a "highly technical" reading of the statute is "contrary to commercial and practical considerations and common sense." It suggests that we look to the legislative intent and conclude that the "or" in the statute should be given conjunctive rather than disjunctive effect.[3] We respectfully decline Ocean Bank's invitation to look behind the plain language of the statute and conclude that given its clarity it must be read as written.
In Capers v. State, 678 So.2d 330 (Fla.1996), the Florida Supreme Court stated:
[T]he plain meaning of statutory language is the first consideration of statutory construction. St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982). Only when a statute is of doubtful meaning should matters extrinsic to the statute be considered in construing the language employed by the legislature. Florida State Racing Comm'n v. McLaughlin, 102 So.2d 574, 576 (Fla.1958).
Id. at 332. See also Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995); C.W. v. State, 655 So.2d 87 (Fla.1995); Baker v. State, 636 So.2d 1342 (Fla.1994); State v. Jett, 626 So.2d 691 (Fla.1993); Weber v. Dobbins, 616 So.2d 956 (Fla.1993); In re McCollam, 612 So.2d 572 (Fla.1993); Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315 (Fla.1992); Taylor Woodrow Constr. Corp. v. Burke Co., 606 So.2d 1154 (Fla.1992); Streeter v. Sullivan, 509 So.2d 268 (Fla.1987). These cases preclude the analysis urged by Ocean Bank. Although Ocean Bank's position has been noted in the legal literature,[4] "unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language." Jett, 626 So.2d at 693. Then Chief Justice Rosemary Barkett explained the reasoning *970 behind this principle in Weber v. Dobbins, 616 So.2d 956 (Fla.1993):
The reason for the rule that courts must give statutes their plain and ordinary meaning is that only one branch of government may write laws. Just as a governor who chooses to veto a bill may not substitute a preferable enactment in its place, courts may not twist the plain wording of statutes in order to achieve particular results. Even when courts believe the legislature intended a result different from that compelled by the unambiguous wording of a statute, they must enforce the law according to its terms. A legislature must be presumed to mean what it has plainly expressed, and if an error in interpretation is made, it is up to the legislature to rewrite the statute to accurately reflect legislative intent.
Id. at 959-60 (Barkett, C.J., dissenting) (citations omitted).
The Supreme Court of Florida has fashioned only one exception to this general rule: "[t]his Court will not go behind the plain and ordinary meaning of the words used in the statute unless an unreasonable or ridiculous conclusion would result from failure to do so." Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984). The plain and ordinary meaning of the words of the statute under review do not lead to either an unreasonable or ridiculous result. As discussed more thoroughly below, one of the critical considerations in the drafting of Article 4A was that parties to funds transfers should be able to "predict risk with certainty, to insure risk with certainty, to adjust operational and security procedures, and to price funds transfer services appropriately." See 19A Fla. Stat. Ann. 15 (U.C.C.cmt.1995). All of these goals are reasonable and assured by the plain statutory language.
In the present case, although the payment order correctly identified the beneficiary, it referred to a nonexistent account number. Under the clear and unambiguous terms of the statute, acceptance of the order could not have occurred. As the Florida Supreme Court stated in Jett:
We trust that if the legislature did not intend the result mandated by the statute's plain language, the legislature itself will amend the statute at the next opportunity.
Jett, 626 So.2d at 693.
As indicated above, the trial court dismissed count two of the complaint which sounded in negligence. The court concluded that the statutory scheme preempts the common law remedy of negligence. It is not clear whether the adoption of Article 4A of the UCC abrogated the common law cause of action for negligence relating to a wire transfer, as raised in count two of the complaint. The Uniform Commercial Code Comment following section 670.102, Florida Statutes (1995), which delineates the subject matter for chapter 670, provides in part:
In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised in this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
Funds transfers involve competing intereststhose of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort *971 to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.
(Emphasis added). See U.C.C. § 4A-102 cmt. (1977); see also, 19A Fla. Stat. Ann. 15 (U.C.C.cmt.1995)(emphasis added). This comment suggests the exclusivity of Article 4A as a remedy. Although the commentary to the UCC is not controlling authority, see Solitron Devices, Inc. v. Veeco Instruments, Inc., 492 So.2d 1357, 1359 (Fla. 4th DCA 1986); 1 Ronald A. Anderson, Anderson on the Uniform Commercial Code, §§ 1-102:34-:37 (1995 Revision), we are persuaded by the expressed intent of the drafters.
In addressing this issue we restrict our analysis to the pleadings and facts of this case. In pertinent part, count two reads as follows:
Ocean Bank owed Corfan Bank a duty of care to follow the accepted banking practice of the community, and to return the funds from the first transfer to Corfan Bank upon receipt due to the reference in the first transfer to a non-existent account number.
The duty claimed to have been breached by Ocean Bank in its negligence count is exactly the same duty established and now governed by the statute. Under such circumstances we agree with the trial judge that the statutory scheme preempts the negligence claim in this case and affirm the dismissal of count two.[5] We do not reach the issue of whether the adoption of Article 4A of the UCC preempts negligence claims in all cases.
We reverse the Final Summary Judgment entered by the trial court in favor of Ocean Bank as to count one of the complaint and affirm the dismissal of count two. We remand this case for further proceedings consistent with this opinion.
LEVY, J., concurs.
NESBITT, Judge, dissenting:
I respectfully dissent. I would affirm final summary judgment for Ocean Bank. In my view, the trial court's well-reasoned and pragmatic approach to the interpretation of section 670.207, Florida Statutes (1995), was the best solution to the disagreement between these parties. Corfan Bank itself was negligent in handling the wire transfer in question. Corfan Bank incorrectly listed Silva's account number on the first wire transfer order and, compounding that error, Corfan sent the second wire transfer order with no indication that it was a correction of the first. These errors caused Corfan's loss.
More important, the language of section 670.207 does not proscribe the actions taken by Ocean Bank. Section 670.207 precludes acceptance of a wire transfer order only if "the name, account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account." Considering this section in its entirety as statutory construction requires, see Fleischman v. Department of Professional Regulation, 441 So.2d 1121, 1123 (Fla. 3d DCA 1983), it seems apparent that the part of the statute that permits the receiving bank to look to "other identification" surely allows more flexibility than the majority here would permit.
In my view, the statute question should neither be construed in the disjunctive or the conjunctive. As stated above, the construction of a statute that will reject part of it should be avoided. See Snively Groves, Inc. v. Mayo, 135 Fla. 300, 184 So. 839 (1938); or, as sometimes stated, "A court should avoid *972 reading the statute so that it will render part of the statute meaningless." Unruh v. State, 669 So.2d 242, 245 (Fla.1996). There are segments of this statute that plainly permit a receiving bank to look at other identification, thus affording the receiving bank more flexibility in making the correct identification than the court recognizes today.
Ocean Bank's actions seem to better comport with the overall statutory scheme relating to funds transfers[6] than the avenue supported by the court. The primary purpose of using a wire transfer of funds is to enable the beneficiary to get the funds quickly. Indeed, commercial or contract deadlines may be adversely impacted if the wire transfer does not go through quickly, as anticipated. We should recognize that the importance of speed in a wire transfer becomes even more critical in transactions involving different countries with, perhaps, different time zones. For example, if transmitting bank Corfan was closed by the time the funds were received by Ocean Bank, Ocean Bank would not have been in a position to rectify the error until the next business daywhich might well render the entire reason for the transfer moot.
Ocean Bank chose to use the beneficiary's name (which was properly included on the first wire transfer order) and "other identification of the beneficiary"the fact that the account number given was similar to that of the beneficiary, as well as verification that the beneficiary was expecting the transfer in order to accept the wire transfer and properly credit the beneficiary's account. Ocean Bank decided that there was enough information in the first wire transfer order for it, after verification, to credit the transfer to the beneficiary's account. The order contained the beneficiary's name and account number, with a few zeros replacing the correct "6"s. This information referred not to a "nonexistent or unidentifiable person or account" but rather to an existing customer the intended beneficiaryand to an identifiable (through "other identification") account.
I can find no common sense reason to prohibit Ocean Bank or other banks from accepting the responsibility that goes with choosing to use "other identification" in order to deposit funds into a customer's account. Basically, by verifying with Silva that he was the intended beneficiary, Ocean Bank was correcting Corfan Bank's error. Ocean Bank was seeking to aid its customer, the intended beneficiary of the funds, in getting the funds in an expeditious manner. Had Ocean Bank erroneously deposited the funds into the wrong account, it would have to face the liability associated with that decision. However, it should not face liability because it deposited the funds into the correct accountthe intended beneficiary's account. Indeed, it was only because of Ocean Bank's actions that the intended beneficiary, Mr. Silva, received the funds from the first transfer.
Moreover, as the trial court emphasized, Florida's enactment of the U.C.C. did not abrogate other common law principles applicable to commercial transactions. A longstanding equitable tenet of Florida law is that, as between two innocent parties, the party best suited to prevent the loss caused by a third party wrongdoer must bear that loss. See Exchange Bank of St. Augustine v. Florida Nat'l Bank of Jacksonville, 292 So.2d 361, 363 (Fla.1974) ("[I]f one of two innocent parties is to suffer a loss, it should be borne by the one whose negligence put in motion the flow of circumstances causing the loss.") See also In re International Forum of Florida Health Benefit Trust, 607 So.2d 432, 437 (Fla. 1st DCA 1992) ("if two innocent parties are injured by a third party, either by negligence or fraud, the one who made the loss possible must bear legal responsibility"); Cheek v. McGowan Electric Supply Co., 483 So.2d 1373, 1377 (Fla. 1st DCA 1985) ("as between ... [two] innocent parties, the responsibility for [a third party's fraud] rests with ... the party who was in the better position to protect himself....")
In a federal case applying Florida law and the U.C.C. to a "lost check" situation, a U.S. District Court held that: "a negligent defendant will prevent a plaintiff from recovering for damages under [U.C.C.] Article 4 if the defendant can demonstrate that the plaintiff *973 was negligent and that the plaintiff's negligence played a substantial role in the plaintiff's loss." Norstar Bank of Upstate New York v. Southeast Bank, 723 F.Supp. 187, 191-92 (N.D.N.Y.1989).
Here, Corfan put in issue the question of the correlative negligence of its and Ocean's actions. It is undisputed that Corfan was initially negligent in transmittal of the first wire transfer. It realized its mistake the following business day, and sent a second wire transfer with no indication it was a correction of the former. It was entirely unnecessary to transmit additional funds merely to correct the previous days error. If it had not sent the additional funds, it is unlikely there would ever have been a dispute bringing the matter before us. Simply, Corfan Bank was in a better position to prevent the loss and, indeed, Corfan's negligence played a "substantial role" in that loss. These facts should prevent its recovery from Ocean Bank. See Exchange Bank, 292 So.2d at 363; Cheek, 483 So.2d at 1377; Norstar, 723 F.Supp. at 191-92.
For the above-mentioned reasons, I would affirm.
NOTES
[1] As indicated by the bold, underlined numbers, the three sixes in the account number had been replaced with zeros on the transfer order.
[2] Eventually, Silva acknowledged that he owed Corfan Bank $72,972.00 and gave Corfan a series of post-dated checks to repay that amount, plus interest. However all the checks bounced.
[3] See Byte Int'l Corp. v. Maurice Gusman Residuary Trust No. 1, 629 So.2d 191 (Fla. 3d DCA 1993); Harper v. Cooper, 226 So.2d 878 (Fla. 4th DCA 1969); Infante v. State, 197 So.2d 542 (Fla. 3d DCA 1967); Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967).
[4] One respected treatise on the Uniform Commercial Code analyzes the code provision, 4A-207(a), which is identical to the statute in question, as follows:

The requirements of subsection 4A-207(a) are stated in the disjunctive. Thus, apparently, if the payment order name and bank account number provide an identifiable or known person but "other identification of the beneficiary" refers to a nonexistent or unidentifiable person or account, subsection 4A-207(a) is literally applicable. The express deference in subsection 4A-207(a) to subsection 4A-207(b) does not appear to resolve this conundrum. Subsection 4A-207(b) provides rules only for payment orders in which the beneficiary is identified "by both name and an identifying or bank account number" in the instance in which the name and the number identify different persons.
It does not appear that this anomaly in subsection 4A-207(a) was intended; nonetheless, the subsection 4A-207(a) suggests only one preventive mechanism for avoiding this conundrum: the sender should include no "other identification of the beneficiary" which might "refer ... to a nonexistent or unidentifiable person or account." Then subsection 4A-207(a) would be harmonized with subsection 4A-207(b) as long as the name and account number refer to the same identifiable person or account. If they refer to different identifiable persons or accounts then subsection 4A-207(b) controls. If either the name or account number refers to a nonexistent or unidentifiable person then subsection 4A-207(a) is again applicable.
William D. Hawkland & Richard Moreno, Uniform Commercial Code Series, § 4A-207:01 (1993)(emphasis added).
[5] We note that allowing a negligence claim in this case would "create rights, duties and liabilities inconsistent" with those set forth in section 670.207. In a negligence cause of action, Ocean Bank would be entitled to defend on a theory of comparative negligence because Corfan Bank provided the erroneous account number which created the problem at issue and then initiated the second transfer without communicating with Ocean Bank. Section 670.207 does not contemplate such a defense. (Oddly enough, allowing Corfan Bank's negligence claim in this case might actually inure to Ocean Bank's benefit). As explained in the comment, one of the primary purposes of the section is to enable the parties to wire funds transfers to predict risk with certainty and to insure against risk. The uniformity and certainty sought by the statute for these transactions could not possibly exist if parties could opt to sue by way of pre-Code remedies where the statute has specifically defined the duties, rights and liabilities of the parties.
[6] Chapter 670, Florida Statutes (1995).