PRINTPACK, INC., Plaintiff and Counterdefendant-Appellee and Cross-Appellant, *v.* CONTAINER TECHNOLOGIES, INC., Defendant and Counterplaintiff-Appellant and Cross-Appellee.

Second District   No. 83—427

Opinion filed May 24, 1984.

Gerald M. Miller and W. Scott Porterfield, both of Fishman, Merrick & Perlman, of Chicago, for appellant.

James E. Doroshow, Leonard O. Abrams, Joel A. Haber, and Fred F. Herzog, all of Berman, Fagel, Haber, Maragos & Abrams, of Chicago, for

appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Container Technologies, Inc. (CTI), entered into an agreement with Printpack, Inc. (Printpack). Printpack was to provide CTI with coated materials from which CTI would then make metallized toy balloons. After delivering its product and not being paid for its services Printpack sued CTI for $20,379.75. CTI counterclaimed, alleging Printpack had breached the contract and warranties contained therein. After a bench trial before the circuit court of Lake County the court denied damages for CTI and entered judgment in favor of Printpack on its counterclaim, awarding it $6,481.43 in damages. CTI appeals, and Printpack cross-appeals.

On appeal CTI contends that the trial court erred in awarding damages to Printpack after it found that Printpack had breached the contract in issue. CTI contends the trial court should have awarded it damages under the contract, as well as out-of-pocket expenses and lost profits.

In its cross-appeal, Printpack urges that the trial court erred in awarding it only 30% of the amount it had sought. Rather, Printpack urges on appeal, it is entitled to the full contract price. Printpack also contends that CTI waived strict compliance and any implied warranties of fitness because it instructed Printpack to proceed and use material it knew to be defective, and failed to provide specifications. Printpack also argues that CTI failed to reject the materials and, therefore, it cannot defend or recover on a breach of warranty theory.

CTI points out that in 1980 it was the sole producer of metallized balloons in the world. In October of that year, Larry Anderson, general manager of CTI's Dallas plant, contacted Printpack and inquired if it would be interested in extrusion coating for CTI balloons. Prior to this only one other company had provided this service for CTI. Printpack, which had experience in extrusion coating for food packaging, agreed to do a trial run.

Michael Fisher, a sales manager for Printpack, testified that he had the initial contact with Larry Anderson. CTI placed an initial order to have Printpack coat 2,000 pounds of material with polyethylene. Fisher testified that he received a specification sheet from Anderson, and that with the exception of what came to be known as exhibit No. 4, he received no additional instructions before Printpack entered into an agreement to do a second batch of work. Fisher also testified that the instructions he did receive from CTI included a request that the printer or converter, such as Printpack, review the

specifications with them and help them to develop formalized specifications. He indicated there were no formal specifications on the bond strength and that plaintiff's exhibit No. 4 contained the only written specifications received from Anderson.

Howard Schwan, plant manager for CTI, testified that Tom Brown came in from Printpack to pick up some materials. Schwan gave him some samples of the test batch and advised him the bond level was substandard. In mid-November of 1980 Brown and James Hartzfield visited CTI again. During the second visit the men from Printpack were shown that the balloons would not hold air and therefore were unacceptable. Brown testified that the balloon would break where a wrinkle ran through the seal. Brown also testified that he did not receive any specifications while he visited CTI's plant. Patrick Winters, vice-president and general manager for CTI, testified that he had met with Brown and Hartzfield and had discussed the need for having a certain destruct level bond for the balloons. Winters also testified that Brown or Hartzfield indicated to him that the problem with the heat seal could be corrected. Brown indicated that CTI placed a second order for material with Printpack after their meeting, and that when they received that material they were continuing to have sporadic problems with it. Winters testified that 70% of material that they had run was "dubious and couldn't be shipped."

Printpack was paid for coating the initial order on December 8, 1980. According to Fisher, regional sales manager for Printpack, there had been an initial complaint regarding the material not sealing properly but after subsequent follow-up they were told the material in fact performed satisfactorily. At that point CTI issued a check for approximately $4,000 to Printpack. Also on December 8, 1980, Larry Anderson placed an additional order for 2,000 pounds of material with Fisher.

CTI relates that due to problems with the seals approximately 5,000 pounds of Printpack coated material remains at CTI because it could not be made into balloons. Roughly, 30,000 balloons were returned to CTI from customers.

Printpack stresses the contention that the material delivered to it was defective. Some of it would not go through Printpack's equipment and according to Allan Gastinger, plant manager for Printpack in Grand Prairie, Texas, 13 rolls of material were defective and had to be returned. Gastinger testified that their concern was with the wrinkles on the material. According to Gastinger and Perry Fowler, quality control and customer service supervisor, Anderson was present when concern regarding wrinkles in the material was discussed. An-

derson acknowledged the condition of the material but indicated that since it had already been metallized and printed it should be coated—otherwise it would be unusable to CTI. According to Fisher, sales manager for Dallas, Gastinger told Anderson that if there were wrinkles on the material the extrusion coating on the film would not provide the type of sealant web that CTI had required. At this time a piece of material was pulled off the roll and an attempt was made to pull apart the bond between the extrusion coating and the polyethylene. The bond could not be pulled apart and Anderson indicated that the material would be acceptable. When he was advised that some of the material might not go through the Printpack machinery Anderson stated that the investment had already been made in the film and the only way it would be salvageable would be if it was coated. Thus, Printpack went ahead and processed the material.

According to Tom Brown, technical manager for Printpack, Printpack received no complaint about the material it had shipped to CTI. The complaint did not arise until Printpack requested payment for the services. In fact according to the testimony of Fisher, Printpack's sales manager, in January of 1981 he spoke with Anderson, CTI's general manager in Dallas, and asked him if there was a reason why the invoices had not been paid. Anderson advised him that he knew of no reason for the nonpayment.

Printpack subsequently filed a complaint against CTI seeking $20,279.75 due for the coating materials for CTI. CTI filed affirmative defenses as well as a counterclaim and alleged that Printpack had breached its agreement and warranty with CTI. CTI claimed it was Printpack's responsibility to cover CTI's costs for the coated material which it could not sell or use and that Printpack should bear the burden for loss of profits arising from the materials that could not be used.

As indicated, the trial court ruled that Printpack was entitled to an award of $6,481.43, an amount equal to 30% of the amount charged by them for the coating, plus $525 for other services Printpack provided. The trial court ultimately found that a three- or four-page specification provided by CTI was never delivered to the plaintiff in this case. The court found that, at best, Printpack had a simple order form which ordered that 15,000 pounds of nylon be processed.

The first contention raised on appeal is that the trial court erred as a matter of law in awarding damages to Printpack after ruling that Printpack breached its contract with CTI.

▮ CTI contends that there was a contract between it and Printpack for the extrusion coating of certain materials, and that the pur-

pose of the contract was for Printpack to coat material in a manner which would effect a proper seal for making balloons. CTI urges that the trial court correctly ruled that Printpack breached its contract with CTI. The court found that over 70% of the material coated by Printpack was inadequate for use as balloons. CTI takes this analysis a step farther. It urges that while the court properly ruled that a contract did exist, and that Printpack breached that contract, the trial court erred in awarding damages to Printpack. We disagree.

The basis of CTI's contention in this regard is that Illinois courts have held that a party cannot recover under a contract unless that party has performed all his material obligations thereunder. Thus, CTI contends, Printpack cannot recover any portion of the purchase price of goods or materials sold if the goods are defective. In support of this contention CTI relies on the case of *Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 436 N.E.2d 12. In *Fryison*, plaintiff sued to enforce a contract for the sale of real estate to defendant. The trial court entered a summary judgment in plaintiff's favor. On appeal the court noted that one seeking to recover on a contract must have substantially complied with all of the material terms of that contract. The court held that plaintiff in *Fryison* had not done so. Accordingly, she had failed to establish her right to summary judgment and the cause was reversed. *Fryison* is inapposite. In the case at bar the contract was not a simple real estate transaction, but an agreement to perform a new and untried service.

Similarly, we believe *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620, is inapplicable to the instant case. In *Godare* plaintiff filed suit to recover pension benefits due from a former employer. The court noted that the contract between the parties provided that one who sought to claim disability was required to have a medical examination prior to age 65. Because plaintiff failed to satisfy the condition precedent of that agreement the court held no contractual liability results. (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 52, 430 N.E.2d 620, 624.) Unlike the contract in *Godare*, in the case at bar there was no specific condition precedent that one party failed to perform. *Morris v. Wibaux* (1895), 159 Ill. 627, 43 N.E. 837, is also of no assistance to CTI. *Morris* was a contract for the purchase of cattle, which had specific terms for delivery that were not complied with. In the instant case the terms of the contract were not so specific as to require that Printpack be held entirely at fault.

■ CTI also contends that the trial court erred in that it was attempting to apply a comparative negligence standard to this contract.

We disagree. It is clear that a number of circumstances exist which warrant the imposition of an amount of damages less than the full contract price. Further, it has been held that the findings of the trier of fact will not be disturbed when the evidence is contradictory. Unless the findings of the trial court are manifestly against the weight of the evidence they should not be disturbed. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518.) In the instant case the trial court found that the agreement entered into between the parties was experimental and that both sides were prepared to take some risks. This conclusion is supported by testimony presented at trial. For example, John C. Davis, chief executive officer of CTI, testified that in 1980, when it was the only manufacturer of metallized balloons in the world, it was paying $4 a pound for Glenroy to provide extrusion coating for its product. By contrast, the invoice prepared by CTI for Printpack to do extrusion coating provided that it would be done for $1.65 a pound. Further, Davis was aware that Printpack was not experienced in this particular type of extrusion coating. This evidence, together with the testimony that Larry Anderson, general manager for CTI in Dallas, advised Printpack's employees to run the material regardless of any wrinkles that it had, does not support CTI's contention that the trial court erred in awarding damages to plaintiff because plaintiff breached its contract.

CTI's next contention on appeal is also based on the presumption that the trial court found Printpack had breached its contract with CTI. CTI urges that, because Printpack breached its contract, CTI is entitled to damages. CTI contends that the evidence is uncontroverted that it is entitled to its out-of-pocket expenses and lost profits which it could have earned on the balloons had they not been defective. In support of these contentions CTI points to the language on the back of the purchase order which stated:

> "[S]eller expressly warrants that all the products, material and work covered by this Purchase Order will conform to the specifications, drawings, samples or other descriptions furnished or adopted by purchaser and will be fit and sufficient for the purposes intended, merchantable, of good material and workmanship and free of defects ***."

■ Although the above-quoted invoice language provides for warranties, it also provides that the warranty is that the material and work covered by the order will conform to the specifications furnished or adopted by the purchaser. In the instant case the court found that the parties had not agreed upon specifications, that CTI had not provided Printpack with specifications, and, therefore, that no warranties

were made between the parties. The trial court also noted that there were obligations on the part of both parties that were not entirely complied with. Our review of the record leads us to conclude the trial court ruled properly in this regard.

■ CTI also contends that it is entitled to out-of-pocket expenses of $40,320 (at $0.12 per balloon) and lost profits of $33,600. While these claims did, as CTI contends, go uncontroverted, for the reasons stated we see no basis for making Printpack responsible for these amounts. CTI has not proved that the contract contemplated that Printpack would be responsible for CTI's lost profits. The evidence indicates that many of the elements of this contract were speculative. CTI was seeking a substantially less expensive provider of extruded materials, and Printpack was not familiar with the procedures for applying this particular extrusion. According to the record, both parties agreed to run wrinkled materials despite the apparent problems it could cause. Both CTI and Printpack were taking risks in entering into the contract. CTI has not supported its contention that Printpack was to be responsible for any lost profits that may result from the agreement. We affirm the trial court in this regard.

■ CTI contends that the Uniform Commercial Code allows incidental and consequential damages in the case at bar. (Ill. Rev. Stat. 1981, ch. 26, pars. 2—714, 2—715.) However, this issue was not brought to the attention of the trial court, was not argued before it, and thus the argument cannot be asserted on appeal. (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 969-70, 424 N.E.2d 1279; *State Farm Fire & Casualty Co. v. Kohen* (1981), 98 Ill. App. 3d 860, 864, 424 N.E.2d 992, 995.) This would also be true of Printpack's contention that CTI failed to reject the material it had been sent, and thus is liable for the entire price of the goods sold, under sections 2—601 and 2—607 of the Uniform Commercial Code. (Ill. Rev. Stat. 1981, ch. 26, pars. 2—601, 2—607.) This contention was not argued before the court and is waived for purposes of review.

■ Turning to Printpack's cross-appeal, the first contention is that Printpack is entitled to the entire contract price. Printpack urges that CTI was attempting to avoid its obligation to pay and that it never complained about the quality of the work. The record does not support this contention. Printpack concedes in its brief that CTI complained about the defects in the material one month after they were received by CTI, in January of 1981. CTI urges its decision not to pay was not an afterthought. On the other hand, the trial court specifically found that Printpack had breached the contract it had with CTI to the extent of 70%. While Printpack contends it is entitled to the

full contract price from CTI, it does not present a convincing argument that it fulfilled all its contractual obligations.

■ Printpack next argues that because this is an experimental contract Printpack is not to be denied payment because the article produced was defective. In support of this it cites *Fish v. Chicago Stamping Co.* (1895), 58 Ill. App. 663. *Fish* was an action in assumpsit, in which the defendant ordered 1,000 molds to be made. Defendant agreed that he may purchase 10,000 at a future date but that if he did not order the 10,000 he would pay the cost of making the tools for plaintiff. After the defendant complained that the molds did not suit him, he refused to pay plaintiff's costs for having made the tools. The trial court found that the defective condition of the molds was not owing to any fault of plaintiff and ordered the defendant to pay for plaintiff's costs for making the tools. On appeal this decision was affirmed. As Printpack points out, *Fish* is factually similar to the case at bar in that both cases involve an experimental contract. However, *Fish* does not support Printpack's contention that it is entitled to the full contract price. Rather, we believe *Fish* supports the trial court's finding in the case at bar that when parties enter into an experimental contract the risks involved should be shared between them and the contract should not be enforced in full.

■ Printpack next urges that CTI, by its actions, conduct or silence, waived strict compliance with the terms of the contract and lulled Printpack into the false assurance that strict compliance was not required. In support of this contention Printpack relies on *Forman v. Benson* (1983), 112 Ill. App. 3d 1070, 446 N.E.2d 535. *Forman* was a case where plaintiff sought specific performance of a real estate installment contract. Therefore it is distinguishable from the instant case where no real estate is involved. Further, as previously discussed herein, CTI did complain about the product in January of 1981, soon after it received the material. Thus, it is clear that CTI did not, by its inaction, waive strict compliance with the agreement.

In sum, we believe the trial court's resolution of the problems presented in this case was very reasonable. Neither CTI nor Printpack has presented an argument so compelling as to warrant disturbing the trial court's findings.

For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.