218 N.J. Super. 461 (1987)
528 A.2d 47
UNIFOIL CORPORATION, PLAINTIFF-APPELLANT,
v.
CNA INSURANCE COMPANIES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1987.
Decided June 29, 1987.
*463 Before Judges DREIER, SHEBELL and STERN.
Thomas A. McKinney argued the cause for appellant (Waldman, Renda & McKinney, attorneys; Thomas A. McKinney, on the brief).
Marc M. Kaye argued the cause for respondent (Mark A. Clemente, attorney; Marc M. Kaye, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from a summary judgment dismissing its complaint for a judgment declaring insurance coverage for losses allegedly occasioned by plaintiff's defective product. Plaintiff produces foil-laminated paper used in the manufacture of lottery tickets. A supplier and sub-supplier were apparently responsible for defective lacquer supplied to plaintiff which caused plaintiff's product to be defective. When tickets were further processed by plaintiff's customer, Lustour Corp., the tickets' surface would not retain printing after an opaque covering was scrapped off. Thus the purchasers of the tickets *464 would be unable to read the symbols beneath the covering and determine whether they had won prizes. At a time when plaintiff had not realized the extent of the problem, it settled with its suppliers for the sum of $35,000.
Dittler Bros. Inc., the final recipient of the alleged defective foil-coated paper in the manufacturing chain, processed the paper before sending completed tickets to the distributor. It brought action in the United States District Court for the Western District of Michigan, Southern Division, against Lustour Corp. alleging breaches of warranty under the Uniform Commercial Code. Lustour Corp. in turn served Unifoil with a third-party complaint claiming both breaches of warranty and negligence on Unifoil's part. Unifoil, by reason of its prior settlement with and general releases issued to its own suppliers, was subject to a claim of $1,157,722.14 in the Michigan action with no ability to pass the loss to them. It, therefore, turned to defendant, its insurer, for its sole protection.
Defendant CNA Insurance Companies denied coverage under an exclusion provision of the general liability policy which stated:
This insurance does not apply:
* * * * * * * *
... to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
(2) the failure of the Named Insured's Products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured,
but this exclusion does not apply to loss of use of other tangible property from the sudden and accidental physical injury to or destruction of the Named Insured's Products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured....
The case was argued in the Law Division on the basis of defendant's responsibility to pay for the cost of defense and for any eventual judgment that might be rendered against plaintiff. *465 The trial judge determined that the exclusion was applicable and this appeal ensued. While the appeal was pending before us the Michigan action was settled with no liability imposed upon plaintiff. Apparently, the functional defects in the tickets were acknowledged to be substantially unrelated to plaintiff's processing. The sole issue remaining before us, therefore, is the responsibility of defendant to pay for plaintiff's legal costs in the Michigan action, represented at oral argument before us to be between $20,000 and $30,000. We will, therefore, confine our review to the issue of defendant's alleged obligation to defray the cost of plaintiff's defense of the Michigan claim.
The third-party complaint in the Michigan action alleged:
a) The chemical composition of the alleged defective material was improperly formulated;
b) The material was not fit for its intended purposes;
c) The material was not merchantable;
d) The material was improperly mixed;
e) The specifications for the material was [sic] improper with relationship to its intended uses;
f) Implied warranties under the Uniform Commercial Code were breached;
g) Information possessed by the third-party defendants should have been disclosed in order to alter other procedures related to the material;
h) Third-party defendants were negligent and careless with reference to the material by failing to or improperly examining or testing the materials, by failing to exercise proper quality control over the preparation, manufacture, formulation, bottling and distribution of the materials, by failing to discover that the materials were defective, and by failing to act in a reasonable and prudent manner according to the circumstances and conditions then existing;
i) Third-party defendants implied and expressly warranted that the materials were of merchantable quality and that they were reasonably fit for the general use and purpose for which it was manufactured and sold.
The third-party complaint further alleged that the third-party plaintiff's damages resulted as "a proximate cause of the aforementioned breaches of negligence and warranty duties."
There is no question that defendant should be required to defend plaintiff in a third-party action if the claim against plaintiff constituted a risk falling within the purview of the policy coverage. NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. 547, 550 (App.Div. 1986). An insurer's duty *466 to defend an action against an insured is measured by the allegations in the complaint. Ibid.
The exclusion clause quoted above has at least two salient features relevant to the issue before us. One disqualifying factor urged by plaintiff is that the claims against it were not limited by the policy exclusion that the loss of use must result from plaintiff's product's failure "to meet the level of performance, quality, fitness or durability warranted or represented by" plaintiff. This exclusion has been judicially determined to reflect a
... clear and unambiguous desire by the insurer to exclude from coverage damages arising from the breach of representations or warranties made by the named insured as to the level of performance of its work. [Willets Point Contracting v. Hartford Ins. Group, 75 App.Div.2d 254, 259, 429 N.Y.S.2d 230, 233 (App.Div. 1980), aff'd, 53 N.Y.2d 879, 423 N.E.2d 42, 440 N.Y.S.2d 619 (1981)].
Plaintiff further urges that the claims against it were not merely for breaches of warranty, which it acknowledges would fall within this exclusion, but also for negligence which should not be encompassed by this exclusion.
Our analysis of the claims against plaintiff can start with an examination of Spring Motors Distr. Inc. v. Ford Motor Co., 98 N.J. 555 (1985). There the Court determined that a claim by a commercial purchaser for economic losses resulting from the purchase of defective goods is limited by the remedies afforded under the Uniform Commercial Code, id. at 561, and that such
economic expectations that are protected by the U.C.C. are not entitled to supplemental protection by negligence principles.... Stated otherwise, the U.C.C. `is generally regarded as the exclusive source for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself' Prosser & Keaton, supra [Handbook of the Law of Torts (5th Ed. 1984)] § 95A at 680. In the present case, the commercial buyer understandably was disappointed in its purchase. The point remains, however, that the U.C.C. provides an adequate set of rights and remedies to resolve the differences between Spring Motors and the Ford defendants. [98 N.J. at 581-582].
From Spring Motors we see that under New Jersey law the nature of the loss may dictate the viability of the cause of *467 action. The type of loss excluded by the policy provision in the case before us, under New Jersey law,[1] remediable only by a breach of warranty claim, the very claim specifically encompassed by sub-section (2) of the exclusion[2]. It follows that as to any claim based solely upon plaintiff's failure, in the language of the policy exclusion, "to meet the level of performance, quality, fitness or durability warranted or represented" concerning its goods, the law would require that the claim be framed in terms of a breach of warranty claim.
We must now examine the various claims against plaintiff, quoted earlier, and determine whether they all constituted breach of warranty claims barred by the exclusion. The initial claim of improper formulation of the chemical composition of the material, would ordinarily be a strict liability claim; but under the Spring Motors rationale, with only economic damages asserted, the strict liability claim would be subsumed within a breach of warranty claim. Claims (b) and (c) clearly relate to warranty claims under the Uniform Commercial Code. See N.J.S.A. 12A:2-315; 2-314. The claim under (d) that the material was improperly mixed would be subject to the same analysis as that in (a). The claim under (e) is the same as that in (b) and the claim under (f) is merely a combination of the claims under (b) and (c). The claim under (h), although phrased *468 in terms of negligence, under Spring Motors also would be subsumed within the warranty assertion. The claim under (i) adds to the claims under (b) and (c) only an alleged express warranty (see N.J.S.A. 12A:2-313), also barred by the exclusion.
We are left only with the claim under (g), i.e., that information possessed by plaintiff should have been disclosed in order to alter other procedures related to the material. The record discloses that once the allegedly defective lacquer was discovered plaintiff attempted to remedy the situation by informing its customers that the material could be further processed at a different temperature in order to avoid the adverse effect of the allegedly defective material. This post-sale effort might have been separately actionable. This was not an attempt by the seller to "cure" by making a conforming delivery of proper goods, see N.J.S.A. 12A:2-508(1), but rather an attempt to have the customer minimize loss or eliminate losses. But even if these actions were performed negligently, they still are so intimately connected with the sale and the asserted breach of plaintiff's warranties concerning the goods resulting in their alleged loss of use that we find it impossible to distinguish this claim from the other breach of warranty assertions.
The second major issue is whether the product was physically injured or destroyed, since the exclusion is limited to situations where there has been a "loss of use of tangible property which has not been physically injured or destroyed." It is clear that under this portion of the disputed exclusion, "some physical injury to tangible property must be shown in order to trigger coverage." American Home Assur. v. Libbey-Owens-Ford Co., 786 F.2d 22, 25 (1st Cir.1986). See also 7A Appleman, Insurance Law & Practice (Berdal Ed. 1979), § 4508 at 342. If such physical injury is shown, then the exclusion does not apply. Sentry Ins. Co. v. S. & L. Home Heating Co., 91 Ill. App.3d 687, 691, 47 Ill.Dec. 102, 105, 414 N.E.2d 1218, 1221 (Ill. App. 1980).
*469 There is no question in this case that the allegations presented in the Michigan action were only that the eventual tickets could not be used, but we must consider the question whether the eventual tickets, as opposed to the originally foil-coated paper, could be considered tangible property injured or destroyed. Plaintiff has claimed that the consequential damages claimed were caused by the virtual destruction of the tickets which, by the time the damage was apparent, had become a product different than the coated paper plaintiff supplied to its customer. Plaintiff's theory that damage to the eventual product, the tickets, fell within the meaning and terms of its insurance policy is supported in principle in Appleman:
... [W]here an insured's product [is] incorporated into the buyer's product and the buyer [is] later forced to withdraw its product from the market because the insured's product was defective, the cost of withdrawal is not an excluded cost under the insured's product coverage. [7A Appleman, supra, § 4508.02 at 370].
Appleman further explains that this principle pertains because the exclusion does not apply to damages for loss or destruction of the buyer's products when such loss is due to a defect in the insured's product later incorporated into the buyer's product. Id. at 372. See also Marine Midland Ser. v. Samuel Kosoff Inc., 60 App.Div.2d 767, 400 N.Y.S.2d 959 (App.Div. 1977) (involving a defective roof reducing the value of a completed building); International Hormones, Inc. v. Safeco Ins. Co. of America, 57 App.Div.2d 857, 394 N.Y.S.2d 260 (App.Div. 1977) (exclusion inapplicable where defective hormone suspensions incorporated in other chemical solutions rendered the solutions defective); Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co., 34 N.Y.2d 356, 314 N.E.2d 37, 357 N.Y.S.2d 705 (1974) (exclusion not applied where defective noodles used to produce soup rendered the soup defective); Pittway Corp. v. American Motorist Ins. Co., 56 Ill. App.3d 338, 340-43, 13 Ill.Dec. 244, 246-47, 370 N.E.2d 1271, 1273-1274 (1977) (exclusion inapplicable where defective valve placed into a finished product caused property damage to the product of a third party, at least to the extent that market value of the final product was diminished); *470 United Properties, Inc. v. Home Ins. Co., 311 N.W.2d 689 (Iowa App. 1981) (exclusion not applied where defective color coding on tennis court damaged the court itself); and U.S. Fidelity & Guaranty Co. v. Nevada Cement Co., 93 Nev. 179, 561 P.2d 1335 (1977) (defective cement incorporated into concrete weakened the total structure of a building, negating application of the exclusion). These cases are not dispositive, however, since in all of them the defective product caused damage to other tangible property, not merely to intangible enhancements of the original item.
The issue before us was noted, but specifically left open, in an analogous construction case. In Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 243, n. 4 (1979), the Supreme Court construed two related exclusions and held that an insurer was not required to defend a masonry contractor from claims arising out of faulty workmanship, where the damages claimed were only the costs of correcting the faulty work. The Court there distinguished between injuries to persons and property and necessary expenses of repair. The damages alleged against plaintiff in the case before us are analogous to the cost of replacing or repairing faulty goods, even as the damages include the enhancement loss to plaintiff's customer and the other down-stream purchasers. The Supreme Court in Weedo quoted from a law review article, Henderson, "Insurance Protection for Products Liability and Completed Operations  What Every Lawyer Should Know." 50 Neb.L.Rev. 415, 441 (1971):
The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained. [81 N.J. at 240; Emphasis added].
*471 As noted in this quote, contract law governs the insured's responsibility. The Uniform Commercial Code in § 12A:2-715 defines the limits of awards for buyer's incidental and consequential damages. Even putting to one side the damages for an injury to a person or property, clearly eliminated by the policy exclusion, we are left with contract awards for consequential damages which might have included the reimbursement for any product enhancement performed by successive purchasers prior to discovery of the product defect. See N.J.S.A. 12A:2-714(3) and 2-715(1) and (2)(a). The only case we have discovered even raising the issue of such enhancement expenses is Printpack Inc. v. Container Technologies, 124 Ill. App.3d 568, 79 Ill.Dec. 700, 464 N.E.2d 298 (1984). Neither the trial court nor appellate court there awarded the enhancement expenses (or lost profits) to the insured, since, as the appellate court noted, the Uniform Commercial Code basis for such an award had not been pleaded or argued at the trial level. Although the facts of the Illinois case did not support the claim, the viability of such a claim within general contract principles was not challenged. 79 Ill.Dec. at 705, 464 N.E.2d at 303. There, as in the case before us, the damages for which the insurer was allegedly responsible, were not more than the incidental and non-injury contract damages resulting from the alleged breach.
On the facts before us, we have no more than a warranty claim made against plaintiff by a customer who suffered economic damages allegedly due to the failure of plaintiff's product to perform as specified. The allegedly unusable coated paper sold by plaintiff, although changed in appearance, was merely enhanced by the services of others in the manufacturing process. The original product, although printed, coated, cut and distributed, did not constitute "tangible property ... physically injured or destroyed." The claims made against plaintiff, therefore, were outside of its policy coverage.
*472 We find no merit in plaintiff's argument that if coverage is not afforded here, the policy for which plaintiff paid substantial premiums was illusory. Although Unifoil may be unprotected against claims for damages such as those claimed in the Michigan action, the policy coverage was not illusory. If the laminate proved toxic, or if the foil separated and cut the holder of a ticket, or if a defect in the ticket caused the material to injure a processor's printing machines or other equipment, defendant would have been responsible under its policy. If plaintiff desired coverage for damages caused by its product failing to be usable, it might have negotiated separate insurance and paid for a modification of the exclusion clause in question.
In sum, and after analyzing each allegation against plaintiff in the Michigan action, we determine that the claims all fall within the policy exclusion.
The summary judgment appealed from is affirmed.
NOTES
[1] This third-party complaint was filed in Michigan, but we have not been cited to Michigan law. We thus may assume that the law of Michigan is the same as that in New Jersey on this point. Evid.R. 9(3) provides in part:

In the absence of an adequate basis for taking judicial notice of the law of any jurisdiction other than this State and the United States, the judge shall apply the law of this State.
[2] The exclusion permits recovery for the loss of use of other tangible property from the sudden and accidental physical injury to or destruction of the insured's products after they have been put into use by one other than the insured. This exception also parallels New Jersey law. See Spring Motors, supra, 98 N.J. at 578, citing Monsanto Co. v. Alden Leeds Inc., 130 N.J. Super. 245 (Law Div. 1974) and ICI Australia Ltd. v. Elliott Overseas Co., 551 F. Supp. 265 (D.N.J. 1982).